UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL SHOWERMAN,

    Plaintiff,

v.                                                                Case No. 1:18-cv-61
                                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of January 1, 2011. PageID.196. Plaintiff identified his disabling conditions as "post-spinal cord (T10) injury - now arthritis in back" and bilateral wrist/shoulder arthritis. PageID.199. Prior to applying for DIB, plaintiff completed the 12th grade and had past employment as a self-employed excavator. PageID.200. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 15, 2016. PageID.39-45. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ's DECISION

Plaintiff's claim failed at the second step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2011, through his date last insured of December 31, 2011. PageID.41. At the second step, the ALJ found that through the date last insured, plaintiff had medically determinable

3

impairments of a fractured right big toe, a dislocated second toe, and a benign skin lesion. PageID.41. The ALJ further found that:

> Through the date last insured, claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

PageID.43. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act at any time from January 1, 2011 (the alleged onset date) through December 31, 2011 (the date last insured). PageID.44-45.

### III. DISCUSSION

Plaintiff set forth one issue on appeal. After the briefing was completed, the Court allowed plaintiff to file a supplemental brief raising a constitutional issue regarding the legal authority of the ALJ to act in this matter. The Court will address the constitutional issue first.

#### A. The ALJ was appointed in an unconstitutional manner

Plaintiff contends that this case should be remanded because the ALJ who presided over his case was not properly appointed pursuant to the Appointments Clause of the United States Constitution, citing *Lucia v Securities and Exchange Commission*, -- US --; 138 S. Ct. 2044 (June 21, 2018), which held that the ALJ's employed by the Securities and Exchange Commission (SEC) to hear disputes were appointed in an unconstitutional manner. Specifically, the ALJs of that agency had to be appointed by the President, Courts of Law, or Heads of Departments in the manner set forth in the Appointments Clause. *Id.*at 2049-55. Absent such appointment, the ALJs employed by the SEC lacked the authority to perform their assigned tasks. *Id.* at 2049-55.

Plaintiff did not raise this issue in during the administrative appeal. In *Pugh v. Commissioner of Social Sec*, No. 1:18-cv-78, 2018 WL 7572831 (W.D. Mich. Nov. 8, 2018), the Court concluded that a Social Security claimant who did not challenge the constitutional authority

of an ALJ during the administrative proceedings cannot make such a challenge for the first time in an appeal brought pursuant to 42 U.S.C. 405(g):

> In *Lucia*, the Court reiterated that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S.Ct. at 2055. The Court found that Lucia was entitled to relief because he timely challenged the appointment of the ALJ hearing his case by asserting such during the administrative process before the SEC. *Ibid*. Lower federal courts have subsequently concluded that, based on *Lucia*, a Social Security claimant must raise the ALJ appointment issue before the Social Security Administration, otherwise such is untimely and, therefore, waived. *See, e.g.*, *Thurman v. Commissioner of Social Security*, 2018 WL 4300504 at *9 (N.D. Iowa, Sept. 10, 2018); *Garrison v. Berryhill*, 2018 WL 4924554 at *2 (W.D.N.C., Oct. 10, 2018); *Davidson v. Commissioner of Social Security*, 2018 WL 4680327 at *1 (Sept. 28, 2018).
>
> These decisions are persuasive and consistent with the express holding in *Lucia*. Plaintiff does not allege that she raised the ALJ appointment issue before the Commissioner. Instead, Plaintiff has asserted such for the first time in this Court. Accordingly, the Court finds that Plaintiff has waived any argument pertaining to the constitutionality of the appointment of the ALJ who resolved her claim for benefits. Plaintiff's motion is, therefore, denied.

*Pugh*, 2018 WL 7572831 at *1. For these reasons, plaintiff's claim is denied.

> **B. The Decision improperly finds that plaintiff's spinal cord injury was not a severe impairment because no records between January 1, 2011, and December 31, 2011, existed to establish functional limitations during that time period.**

Plaintiff contends that the ALJ failed to classify his 1990 spinal cord injury as a severe impairment during the relevant insured period of January 1st through December 31st, 2011. Plaintiff claims that he was disabled during that time due to the residual problems of a 20-year-old spinal injury. The ALJ addressed plaintiff's claim in pertinent part as follows:

> The minimal medical evidence provided by claimant indicates that he received treatment during the relevant insured period of alleged disability for fractured right big, right dislocated second toe, and skin lesions. . . .

In July 2016, Anthony Chiodo, M.D., of U of M prepared a medical source statement, indicating that claimant had been receiving treatment for over 15 years for incomplete spinal cord injury with osteoarthritis, chronic tendonitis, and nerve root compression. Dr. Chiodo indicated that claimant was dealing with neuro-anatomic distribution of pain and lower back pain with muscle weakness. Claimant could not do the heel and toe walk or squat. He had sensory or reflex loss. He had trouble with ambulation on rough or uneven surfaces, and trouble with carrying out routine ambulatory activities or climbing of several stairs. He had no limitation of motion of the spine, and he did not need an assistive device to ambulate. He could walk and stand for less than two hours and sit for at least six hours. He had postural limitations (Exhibit 6F). I considered the assessment of Dr. Chiodo of claimant's impairments and the resulting symptoms. However, based on the medical evidence, during the relevant insured period, January 2011 through December 2011, claimant had no severe impairments that were work preclusive, and no significant medical treatment during that period.

I considered the February 2015, physician assessment from Disability Determination Services (DDS) by Myung Ho Hahn, M.D., indicating that claimant had severe impairments, including osteoarthritis, joint dysfunction, and neuropathy as severe. However, based on the record, claimant was not disabled from work related activities (Exhibit 1A). I give partial weight to the assessment of Dr. Hahn. Based on the medical evidence, during the relevant insured period, claimant's impairments were not severe to the preclusion of work-related activities.

I have considered claimant's allegations and the medical findings and, giving him the benefit of the doubt, I have concluded that he has no severe impairments. Claimant testified that he did not received any significant treatment during the relevant insured period. He stated that he is still dealing with residuals from his 1990 auto accident, and he has continue [sic] to use a cane to ambulate. Claimant stated that he used his cane during the time when he was working. Additionally, the claimant stated that he injured his toes while get getting out of bed in 2011. He admitted that his excavating business was hurt by the downturn in the economy, and by 2011, he had laid off his employees and started to do the work himself. Although claimant testified that he started hurting by doing the work himself, he did not follow up with treatment other than the records relating to his toes and his skin lesions (Exhibits 1F/3, 1F/4, and 11F). . . .

Additionally, claimant has not generally received the type of medical treatment one would expect for a disabled individual during the relevant insured period, and the limited treatment received has been essentially routine and conservative in nature. Claimant continued to work during the relevant insured period. I considered claimant's January 2015, function report concerning his constant pain and stiffness in his back, knees, shoulders, and wrists with difficulty performing daily function (Exhibit 4E). Additionally, I considered the August 2016, brief by claimant's representative (Exhibit 11F). However, the medical

evidence and the record as a whole do not support the function report or the brief during the relevant insured period of consideration.

PageID.43-44.

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Under the Social Security Act, a disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).

> [I]n this Circuit the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process. Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.

*Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (internal citations omitted). In essence, the severity finding at step two has evolved into a regulatory screening device:

> [I]t is now plain that in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation. Nevertheless, Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience. In other words, as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint.

*Id.* at 862-63 (internal citations omitted).

It is undisputed that plaintiff suffered a spinal cord injury in 1990 motor vehicle accident. Later medical records indicate that he suffered from the residual effects of that injury. The May 22, 2007 report from Yeong Kwok, M.D. stated that plaintiff's past medical history

7

"shows a history of traumatic injury to the aorta from MVA status post repair with a graft and postoperative ischemia to the spinal cord resulting in severe loss of strength to the lower extremities." PageID.288. In December 2008, plaintiff reported a history of chronic hip and shoulder problems stemming in part from the motor vehicle accident. PageID.286. In October 15, 2010, certified orthotist Gregory Vessels diagnosed plaintiff as an incomplete paraplegic. PageID.263. On July 20, 2016, Dr. Chiodo completed a medical source statement which was limited to plaintiff's condition as it existed prior to the last insured date of December 31, 2011. PageID.294. Dr. Chiodo stated that he been plaintiff's physician for over 15 years and identified a number of diagnoses, including an incomplete spinal cord injury which he identified as a disorder of the spine with evidence of nerve root compression and neuro-anatomic distribution of pain. PageID.294-295. The ALJ acknowledged that during that 15-year time period, which included the relevant time period in this case, Dr. Chiodo had been treating plaintiff for incomplete spinal cord injury with osteoarthritis, chronic tendonitis, and nerve root compression. PageID.294.

Based on plaintiff's medical history, the ALJ's decision that plaintiff did not have a severe impairment is not supported by substantial evidence. Plaintiff's claim that he suffers from the residual effects of the 1990 spinal cord injury is not "totally groundless" from a medical standpoint and meets the *de minimis* requirement to qualify as a severe impairment at step two. *See Higgs*, 880 F.2d 860 at 862-63. This condition is not "a slight abnormality that minimally affects work ability". *Id*. at 862. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand the Commissioner should re-evaluate plaintiff's claim on the basis that the residual effects from his 1990 spinal cord injury constitute a serious impairment for purposes of step two of the sequential evaluation.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's claim on the basis that the residual effects from his 1990 spinal cord injury constitute a serious impairment for purposes of step two of the sequential evaluation. A judgment consistent with this opinion will be issued forthwith.

Dated: March 27, 2019                                         /s/ Ray Kent
                                                                                        United States Magistrate Judge